UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JASON ALLEN TISZAI,

     Petitioner,

v.                             CASE NO. 6:15-cv-1559-Orl-28-DCI

UNITED STATES OF AMERICA,

     Respondent.
_____/

## ORDER

This cause is before the Court on Petitioner Jason Allen Tiszai's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to Title 28 United States Code Section 2254. Respondents filed a response to the Petition and Appendix of exhibits (Docs. 16, 20) in compliance with this Court's instructions and with the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner filed a reply to the response. (Doc. 23). For the reasons set forth below, the petition is denied.

### I. PROCEDURAL HISTORY

On May 13, 2008, Petitioner was charged by Indictment with first degree murder (Count One), burglary of a dwelling with assault or battery (Count Two), and grand theft of a motor vehicle (Count Three). (Doc. 20 Ex. 1 at 6-9). Petitioner was arraigned on March 6, 2009, and waived any time periods. (*Id.* at 11). In April of 2009, the trial court determined that the effective date for application of the Interstate Agreement on Detainers was October 30, 2008, and calculated the expiration of the 180-day period under the IAD as that day, April 28, 2009. (*Id.* at 17).

1

Petitioner filed a notice of expiration of speedy trial on April 29, 2009, which the Court found well-taken, and the trial began on May 5, 2009. (Doc. 20 Ex. 1 at 38-39, 42, 46). The jury found Petitioner guilty of first degree murder, burglary of a dwelling with assault or battery, and grand theft of a motor vehicle, and Petitioner was sentenced to the following terms: natural life on Count One, twenty-five years on Count Two (consecutive to Count One), and five years on Count Three (concurrent with Count Two). (Doc. 20 Ex. 3 at 2-4, 6-9).

Petitioner appealed his judgment and sentence, and the Florida Fifth District Court of Appeal per curiam affirmed. (Doc. 20 Ex. 4 at 2-36, 92). He then filed a motion for rehearing, which was denied. (*Id.* at 94-95, 97, 99). While the motion for rehearing was pending, he petitioned the Florida Supreme Court for review. (*Id.* at 101-02). The Florida Supreme Court dismissed the petition for lack of jurisdiction. (*Id.* at 108). He then filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, which, as amended, raised fifteen claims. (Doc. 20 Ex. 5 at 2-53). Grounds one through six and eight through fifteen were denied, and ground seven was denied after an evidentiary hearing. (*Id.* at 76-89; Ex. 6 at 2-28, 30-36). Petitioner subsequently filed a petition for writ of prohibition, which was denied (Doc. 20 Ex. 6 at 81-83; Ex. 7 at 2), and, on request, was permitted a belated appeal of his Rule 3.850 motion. (Doc. 20 Ex. 7 at 4-11, 13). The Florida Fifth District Court of Appeal per curiam affirmed the trial court's denial of Petitioner's Rule 3.850 motion. (Doc. 20 Ex. 8 at 61, 63).

Petitioner then filed the instant Section 2254 petition for writ of habeas corpus,[1] alleging the following thirteen claims for relief:

GROUND ONE: "Trial Court erred in denying motion for judgment of acquittal on the charge of burglary with an assault or battery and in sentencing him on that charge where the evidence was insufficient to support a conviction." (Doc. 1 at 5).

GROUND TWO: "Appellant is entitled to relief where his failure to comply with the notice requirement of the Interstate Agreement on Detainers Act (IADA) was the result of government negligence in failing t[o] inform of his rights under the Act." (*Id.* at 7).

GROUND THREE: "Trial Court erred by committing Fundamental error by instructing the jury to convict Appellant of a charge neither included in the indictment nor designated as a lesser included offense to that of indictment." (*Id.* at 8).

GROUND FOUR: "Prosecutor committed flagrant misconduct during his closing arguments with impermissible arguments." (*Id.* at 10).

GROUND FIVE: "Counsel was ineffective for failing to object during prosecutor's highly prejudicial arguments." (*Id.* at 12).

GROUND SIX: "Prosecutor, during closing arguments[,] committed [i]nexcusable fundamental error by misrepresenting material evidence and making arguments not based on facts in evidence or reasonable inferences that can be drawn therefrom." (*Id.* at 13).

GROUND SEVEN: "Failure to object to the State's misrepresentation of material evidence and highly prejudicial closing arguments, which had been a decisive factor in jury's verdict, constituted [ineffective assistance of counsel]." (*Id.* at 15).

GROUND EIGHT: Trial Counsel was ineffective for her failure to request a viable self-defense jury instruction and erroneously advising [Petitioner] to waive such instruction." (*Id.* at 16).

---

[1] Respondents concede the petition was timely filed. (Doc. 16 at 10).

GROUND NINE:     "Trial Counsel's failure to request an evidentiary hearing to determine the probative value of fewer gruesome autopsy photos, where a limited number would have been sufficient for the state's case." (*Id.* at 18).

GROUND TEN:      "Trial Counsel's failure to petition and/or obtain psychological examination to determine [Petitioner's] criminal liability at time of crime—when sanity was an issue presented by the defense—constituted [ineffective assistance of counsel]." (*Id.* at 19).

GROUND ELEVEN: "Trial Counsel's failure to object to the jurors being instructed on Felony murder where it was excluded—failing to include the essential elements of crime, statutory language[,] or citations—from indictment, clearly constituted [ineffective assistance of counsel]." (*Id.* at 20).

GROUND TWELVE: "Trial Court erred instructing jurors on a charge not included in Defendant's indictment, therefore constituting a 5th Amendment and 14th Amendment violation (due process violation)." (*Id.* at 21).

GROUND THIRTEEN:   "[Petitioner's] 14th Amendment [] Right to due process [] was violated by being convicted of a charge not sufficiently proved through the evidence produced by the State. (Freedom from a wholly arbitrary deprivation of liberty)." (*Id.* at 22).

The Court will address related grounds together.

## II.   LEGAL STANDARDS

### A. Habeas Relief Under the Antiterrorism Effective Death Penalty Act (AEDPA).

AEDPA's standard for habeas relief is clear and unambiguous: relief cannot be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). AEDPA thus provides two avenues for relief: one based on a determination that the outcome was itself contrary to clearly established federal law; the other based on a determination that the

4

outcome was infected by an unreasonable application of such law to the facts.   As the Supreme

Court explained:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).   Regardless of the avenue taken, however, a

prisoner "must show that the state court's ruling on the claim . . . was so lacking in justification

that there was an error well understood and comprehended in existing law beyond any possibility

for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## B. Ineffective Assistance of Counsel

The standard for relief based on ineffective assistance of counsel is also clear and

unambiguous: a person is entitled to relief only when counsel's conduct fell below an objective

standard of reasonableness and, in addition, there is a reasonable probability that the outcome

would have been different if counsel had acted reasonably (i.e., that the departure from objective

reasonableness prejudiced the case and, by extension, the client). *Strickland v. Washington*, 466

U.S. 668, 687-88 (1984).   In evaluating counsel's performance, courts apply a "strong

presumption" that the representation "fell within the 'wide range' of reasonable professional

assistance." *Harrington*, 562 U.S. at 104.   As the Eleventh Circuit explained:

> [The test for ineffective assistance] has nothing to do with what the best lawyers would have done. Nor is the test even what most good

lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). It is therefore not an understatement to say that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

## C. AEDPA's "Unreasonable Application" Standard and Ineffective Assistance of Counsel Claims

A state court's application of *Strickland* to a post-conviction claim of ineffective assistance of counsel is subject to review in a habeas proceeding. But establishing that a state court's application of *Strickland* was unreasonable for purposes of AEDPA is especially difficult. As the Supreme Court explained:

> The standards created by *Strickland* and [Section] 2254(d) are both "highly deferential" and when the two apply in tandem, review is "doubly so." The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When §2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Harrington*, 562 U.S. at 105 (emphasis added). More to the point:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from

6

asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of [Section] 2254(d)(l), "an unreasonable application of federal law is different from an incorrect application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* at 101 (citation omitted).

## III. ANALYSIS

### A. Ground One

Petitioner contends that, in violation of his constitutional right to due process, the state trial court erred in denying his motion for judgment of acquittal on the charge of burglary with assault or battery. (Doc. 1 at 5). Petitioner states that evidence at trial demonstrated that he rented a room in the dwelling at issue and was employed by the homeowner, he had his own key to the dwelling, he had travelled out of state but was expected to return, the bedroom he rented still contained his personal property, and there was no forced entry. (*Id.*). He also asserts that there was no evidence of a physical altercation within the dwelling and that the State failed to prove the essential elements[2] of the crime. (*Id.*). Petitioner argues that "there was no legal eviction notice nor an

---

[2] Under Florida law,

"burglary" means:
1.      Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
2.      Notwithstanding a licensed or invited entry, remaining in a dwelling,

injection between [himself] and the victim. There was no evidence of forced entry" and the State did not present "evidence that his permission to remain therein was ever withdrawn," that he "remained therein to attempt . . . a forcible felony," that he was asked to move out, or that he intended to steal the victim's car. (Doc. 23 at 3).

Petitioner raised this argument as issue one in his direct appeal (Doc. 20 Ex. 4 at 16-20) and issue eight in his Rule 3.850 motion. (Doc. 20 Ex. 5 at 31, 36). However, as Respondents contend, Petitioner did not allege a violation of his constitutional rights.

The AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct

_____

structure, or conveyance:
   a.     Surreptitiously, with the intent to commit an offense therein;
   b.     After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
   c.     To commit or attempt to commit a forcible felony, as defined in s. 776.08.

Fla. Stat. § 810.02(b) (2008).

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995)

(quoting *Picard v. Conner*, 404 U.S. 270, 275-76 (1971)). *See also O'Sullivan v. Boerckel*, 526

U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his

claims before he presents those claims to a federal court in a habeas petition."). The petitioner

must apprise the state court of the federal constitutional issue, not just the underlying facts of the

claim or a similar state law claim. *See Henderson v. Campbell*, 353 F.3d 880, 898 n.25 (11th Cir.

2003) ("Both the legal theory and the facts on which the federal claim rests must be substantially

the same for it to be the substantial equivalent of the properly exhausted claim.").

In both his direct appeal and his Rule 3.850 motion for post-conviction relief, Petitioner

challenged the sufficiency of the evidence but did not argue that his constitutional rights were

violated in any way; further, he cited only state, rather than federal, case law.[3] (Doc. 20 Ex. 4 at

16-20; Doc. 20 Ex. 5 at 31, 36). *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004)("A litigant . . . can

easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by

citing . . . the federal source of law on which he relies or a case deciding such a claim on federal

grounds, or by simply labeling the claim 'federal.' "). Because nothing in Petitioner's state court

---

[3] To the extent Petitioner argues that he alleged a constitutional error when he raised the issue presented in Ground One as issue eight in his Rule 3.850 motion (Doc. 23 at 2), that argument is not persuasive. Review of his amended Rule 3.850 motion shows he did not raise a constitutional issue or cite federal law. Further, the state post-conviction court denied issue eight of the Rule 3.850 motion as procedurally barred for failing to raise the issue on direct appeal (Doc. 20 Ex. 5 at 78), which also renders the issue an improper subject of federal habeas review. *See infra* section III(C)(1). And, while Petitioner "asks this [C]ourt to not hold him to the same standard as an attorney of the Florida Bar," (Doc. 23 at 2), the Eleventh Circuit has explained that "once a *pro se* . . . litigant is in court, he is subject to the relevant law and rules of court." *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

appeal or Rule 3.850 motion presented the federal nature of his claims to the state appellate court, Petitioner failed to exhaust Ground One, and Ground One is denied.

## B. Ground Two

Petitioner contends that his rights under the Interstate Agreement on Detainers ["IAD"] were violated, entitling him to discharge.

Among other things, he explains that, while incarcerated to serve a state prison sentence in Michigan, "Orange County, Florida[,] placed a detainer against him for murder." (Doc. 1 at 7). He "became aware by a prison law clerk that he could invoke Article 3 of the IAD[]" and "followed [Michigan Department of Corrections'] policy and procedure by contacting prison authorities of his wish to invoke Article 3 . . . his efforts were disregarded with responses instructing him that 'he' could invoke it himself by contacting the 'Clerk of Court' and/or the 'Law Enforcement Agency' who lodged the detainer." (*Id.*). He then "exercised due diligence and contacted both the Orange County Sheriff's Dep[artment] and Orange County Circuit Court Clerk—the latter responding there was no case pending.[4] Petitioner continued efforts and eventually caused the courts to respond." (*Id.*).

Ultimately, Petitioner sent a letter to the Orange County Sheriff on October 13, 2008, "asking why a detainer was placed on him if there were not pending charges against him, per the

---

[4] Petitioner details in his reply that he "sent a Request for Final Disposition to the Orange County Clerk of Court, and to the Orange County Sheriff's Department, via[] certified mail, return receipt requested. Both requests were received on September 10, 2008." (Doc. 23 at 5). He explains that "[t]he Sheriff's office responded by providing the Petitioner directions to the Clerk of Court, [which] responded by stating: *'No such case was pending' against him.*" (*Id.*).

response of the court clerk." (Doc. 23 at 5). The Orange County Sheriff forwarded the letter "to the court clerk, who then forwarded it to Judge Marc Lubet, who subsequently forwarded it to the state attorney." (Doc. 23 at 5-6). Petitioner states that, "[d]uring pretrial hearings[,] [he] presented return mail receipts showing that his 180 days under the IAD[] Article 3 had expired." (Doc. 1 at 7). But, his *pro se* notice of expiration was stricken,[5] and he "argued for dismissal with prejudice—which was denied on the grounds that [he] never served a copy [on the] State attorney's office." (*Id.*).

Petitioner contends that "the burden of compliance [does not] fall on [the] prisoner[], but is governed by law that prison officials [from the sending state] are responsible," and that the Michigan Department of Corrections' "failure to comply deprived Petitioner of the securities of the IAD[]—Article 3." (Doc. 1 at 7).[6] He raised this claim as issue three on direct appeal and the state appellate court affirmed his convictions and sentences per curiam. (Doc. 20 Ex. 4 at 3, 16, 23-29; Doc. 20 Ex. 4 at 92).

The IAD, codified at Section 941.45, Florida Statutes, "is a compact among 48 states, the District of Columbia, and the United States. . . . [It] establishes procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for the purpose of bringing that prisoner to trial." *Cuyler v. Adams*, 449 U.S. 433, 435 n.1 (1981). "[T]he

---

[5] His *pro se* notice was stricken because he was represented by counsel at the time he filed it. (*See* Doc. 20 Ex. 1 at 29).

[6] Specifically, Petitioner states that the Michigan Department of Corrections officials "failed to 'promptly' inform [him] of the source and contents of his detainer; failed to inform him of his right to make a 'request for final disposition'; and also failed to forward the request to the appropriate prosecutor and court, all in violation of IAD[] [Section] 2, Art. III(a-c)." (Doc. 23 at 9).

Detainer Agreement establishes procedures under which a prisoner may initiate his transfer to the receiving State and procedures that ensure protection of the prisoner's speedy trial rights." *Id.*

Article III of the IAD provides, in pertinent part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he or she *shall* be brought to trial within *180 days* after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his or her imprisonment and the prisoner's request for a final disposition to be made of the indictment, information, or complaint[.]

IAD, art. III(a) (emphasis added).

As an initial matter, violations of the IAD are not generally cognizable on federal habeas proceedings, absent a showing of prejudice. *Seymore v. State of Ala.*, 846 F.2d 1355, 1359 (11th Cir. 1988). Although the IAD is considered a law of the United States,

> not all violations of a "law[ ] of the United States" may be asserted in a habeas corpus proceeding. . . . "the appropriate inquiry [is] whether the claimed error of law [is] a fundamental defect which inherently results in a *complete miscarriage of justice*, and whether [i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."

*Id.* at 1358-59 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)(emphasis added)). The Eleventh Circuit has determined that "violations of the IAD are nonfundamental defects and—absent a showing of some sort of prejudice—are uncognizable in a federal habeas proceeding." *Id.* at 1359. Here, as in *Seymore*, Petitioner has demonstrated no prejudice resulting from the alleged violations of the IAD, as "nothing in the record indicates that the 'violation of the IAD has in any

12

way affected or impugned the integrity of the fact finding process at his trial.' " *Id.* (quoting *Mars v. United States*, 615 F.2d 704, 707 (6th Cir. 1980)).

Moreover, even if cognizable, Petitioner's claim fails. The IAD sets forth the 180-day deadline using mandatory language (i.e., "shall"). *Id.* But the Florida Supreme Court has explained that it "will not grant greater dignity to the IAD's speedy trial time limit than to Florida's speedy trial rule which protects the constitutional right to a speedy trial enunciated in article I, section 16 of the Florida Constitution." *Vining v. State*, 637 So. 2d 921, 925 (Fla. 1994).[7] Therefore, even though Petitioner states that he does not argue a violation of his speedy trial rights, only violation of the IAD (Doc. 23 at 11), whether or not dismissal of the indictment was required for any alleged failure to comply with the IAD or its 180-day time period depends on whether the trial court complied with Rule 3.191 of the Florida Rules of Criminal Procedure. *See id.*

Florida Rule of Criminal Procedure 3.191 protects a defendant's right to a speedy trial, as guaranteed by the Florida Constitution.[8] *Johnson v. State*, 442 So. 2d 193, 196 (Fla. 1983). In

---

[7] Petitioner cites *United States v. Tummolo*, 822 F. Sup. 1561 (S.D Fla. 1993), in support of his position that dismissal of the indictment is required on the basis of the alleged IAD violations. However, *Tummolo* is factually distinguishable from the case at hand, and, in any event, is not binding on this Court.

[8] Florida's constitution provides,

> In all criminal prosecutions the accused shall, upon demand, be informed of the nature and cause of the accusation, and shall be furnished a copy of the charges, and shall have the right to have compulsory process for witnesses, to confront at trial adverse witnesses, to be heard in person, by counsel or both, and to have a speedy and public trial by impartial jury in the county where the crime was committed.

Fla. Const. art. I, § 16(a).

Florida, "every person charged with a crime shall be brought to trial . . . within 175 days of arrest if the crime charged is a felony." Fla. R. Crim. P. 3.191(a). Further,

> (2) At any time after the expiration of the prescribed time period, the defendant may file a separate pleading entitled "Notice of Expiration of Speedy Trial Time," and serve a copy on the prosecuting authority.

> (3) No later than 5 days from the date of the filing of a notice of expiration of speedy trial time, the court shall hold a hearing on the notice and, unless the court finds that one of the reasons set forth in subdivision (j) exists, shall order that the defendant be brought to trial within 10 days. A defendant not brought to trial within the 10-day period through no fault of the defendant, on motion of the defendant or the court, shall be forever discharged from the crime.

Fla. R. Crim. P. 3.191(p)(2)-(3).

Therefore, notwithstanding any alleged error by the Michigan Department of Corrections or the fact that Petitioner contends the IAD limitations period of 180 days ran sometime before the date determined by the trial court, the issue turns on when Petitioner filed a notice of expiration of speedy trial—which he did on April 29, 2009. (Doc. 20 Ex. 1 at 38-39). From that point, per Rule 3.191(p)(3), Florida Rules of Criminal Procedure, the trial court had five days to hold a hearing on the notice. In keeping with the rule, the trial court held the required hearing the following day, April 30, 2009. (Doc. 20 Ex. 1 at 42-43). The trial court then had a ten-day window to begin trial. Fla. R. Crim. P. 3.191(p)(3). As the trial was set for, and began, May 5, 2009—a date within the prescribed ten-day period—the trial court did not violate Petitioner's speedy trial rights. *See id.* (Doc. 20 Ex. 1 at 45-403; Doc. 20 Ex. 2; Doc. 20 Ex.3 at 1-4).

Petitioner has failed to demonstrate error by the trial court or that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established

federal law, or based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to relief on Ground Two.

## C. Grounds Three, Eleven, and Twelve

Grounds Three, Eleven, and Twelve relate to the trial court's instruction to the jury on felony murder.

### 1. Ground Twelve

In Ground Twelve, Petitioner argues that, because he was not indicted for felony murder, the trial court violated his Fifth and Fourteenth Amendment due process rights by instructing the jury on felony murder; he also contends that he was "never properly/sufficiently put on notice of . . . [the] need[] to prepare a defense for Felony Murder." (Doc. 1 at 21).

As Respondents note, Petitioner raised Ground Twelve as issue fourteen in his Rule 3.850 motion. (Doc. 20 Ex. 5 at 39-40). The state court denied that issue as procedurally barred, explaining that "[a] claim of trial court error is one that should be brought on direct appeal, not raised in a motion for post-conviction relief[,]" and that, if the claim was "truly a matter of fundamental error, [it] could have been, and should have been, raised on direct appeal." (*Id.* at 78, citing *Mourra v. State*, 884 So. 2d 316 (Fla. 2d DCA 2004); *Bruno v. State*, 817 So. 2d 55, 63 (Fla. 2001); *Koon v. Dugger*, 619 So. 2d 246, 247 (Fla. 1993); *Johnson v. State*, 593 So. 2d 206, 208 (Fla. 1992); *Armstrong v. State*, 429 So. 2d 287 (Fla. 1983)).

"Federal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law." *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir.1993) (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)). Therefore, a federal court must dismiss

claims that either (1) have been explicitly ruled to be procedurally barred by the highest state court considering the claims, *Harris v. Reed*, 489 U.S. 255, 261 (1989), or (2) are not exhausted but would clearly be barred if returned to state court. *Coleman*, 501 U.S. at 735 n.1.

As the trial court determined that the issues raised by Ground Twelve were procedurally barred because they should have been raised on direct appeal, and that decision was affirmed, per curiam, by the state appellate court,[9] Ground Twelve is denied.

### 2. Grounds Three and Eleven

In Ground Three, Petitioner contends that the trial court "committ[ed] fundamental error by instructing the jury to convict [him] of [felony murder, which was] neither included in the indictment nor designated as a lesser included offense to that of [the] indictment." (Doc. 1 at 8). Specifically, he notes that Count One of the indictment charged him with premeditated first degree capital murder; Count Two charged him with burglary with assault or battery but did not mention homicide; and the State did not mention felony murder in its opening statement and did not present its theory of felony murder until after both sides presented their case. (*Id.*; Doc 20 Ex. 1 at 6-7, 61-73; Doc. 20 Ex. 2 at 30-31). Overall, Petitioner contends that, because he was not indicted with a charge of felony murder, he was not properly notified of that charge and was unable to prepare an adequate defense. Additionally, he explains that the jurors were confused by the difference between premeditated first degree murder and felony first degree murder, as evidenced by a

---

[9]  A per curiam affirmance of a trial court's finding of procedural default is a sufficiently clear and express statement of reliance on an independent and adequate state ground to bar consideration by federal courts. *See Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990), *cert. denied*, 498 U.S. 832 (1990).

question posed to the trial court during deliberations, and that the verdict form did not distinguish between felony murder and premeditated murder. (Doc. 1 at 8; Doc. 20 Ex. 2 at 108-109; Doc. 20 Ex. 3 at 2-4). Thus, he argues, there is "a strong likelihood that [he] was convicted of a charge not included in [the] indictment." (Doc. 1 at 8).

Similarly, in Ground Eleven, Petitioner asserts that his counsel was ineffective for failing to object to the felony murder instruction given to the jury by the trial court, arguing that such failure allowed the jury to convict him of a crime that was not properly charged by indictment.

Petitioner properly exhausted Grounds Three and Eleven before raising them in the instant petition.[10] However, these Grounds are due to be denied.

The state appellate court denied the claim raised by Ground Three by affirming Petitioner's convictions and sentences per curiam. (Doc. 20 Ex. 4 at 92). The state post-conviction court, denying the issues raised by Ground Eleven, explained:

> In Florida, first degree murder can be proven either through premeditation or felony murder. It is well settled that if an indictment charges premeditated murder, the State need not charge felony murder or the particular underlying felony to receive a felony murder instruction. *Craine v. State*, 894 So. 2d 59 (Fla. 2004). *See Woodel v. State*, 804 So. 2d 316, 322 (Fla. 2001); *Gudinas v. State*, 693 So. 2d 953, 964 (Fla. 1997); *Kearse v. State*, 662 So. 2d 677, 682 (Fla. 1995).
>
> The Florida Supreme Court in *Craine* held that in felony murder situations the notice required by due process of law and supplied by the charging document as to other offenses is provided instead by reciprocal discovery rules and by the enumeration of the

---

[10] Petitioner raised Ground Three as issue four in his direct appeal. (Doc. 20 Ex. 4 at 3, 16, 30-35). Petitioner raised Ground Eleven as issue eleven in his Rule 3.850 motion for post-conviction relief. (Doc. 20 Ex. 5 at 31, 37-38).

felonies on which the State may rely to establish first-degree felony murder in § 782.04(l)(a)(2), Fla. Stat. (2003). 894 So. 2d at 69.

Moreover, as long as the definition of the underlying felony provided to the jury is sufficiently definite to assure a defendant a fair trial, "[i]t is not necessary . . . to instruct on the elements of the underlying felony with the same particularity as would be required if the defendant were charged with the underlying felony." *Brumbley v. State*, 453 So. 2d 381, 386 (Fla. 1984); *see also Gudinas*, 693 So. 2d at 964 ("We have repeatedly rejected claims that it is error for a trial court to allow the State to pursue a felony murder theory when the indictment gave no notice of the theory.").

Based on the established law in Florida, counsel was not ineffective for failing to object to the jury being instructed on felony murder.

(Doc. 20 Ex. 5 at 85-86).

As noted by the state post-conviction court, Florida law has long adhered to the principle that "the state does not have to charge felony murder in the indictment but may prosecute the charge of first-degree murder under a theory of felony murder when the indictment charges premeditated murder." *Weatherspoon v. State*, 214 So. 23d 578, 584-86 (Fla. 2017) (quotation marks and citations omitted) (explaining the history of the principle, first outlined in *Sloan v. State*, 69 So. 871 (1915)). Here, Petitioner was charged with premeditated first degree murder (Doc. 20 Ex. 1 at 6) and the trial court was therefore permitted, under Florida law, to instruct the jury on felony murder, notwithstanding that felony murder was not charged in the indictment.

That practice does not violate Petitioner's Constitutional rights. The Supreme Court has instructed that a federal court is bound by the interpretation of state law by the state supreme court on this issue: "If a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not

18

at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law." *Schad v. Arizona*, 501 U.S. 624, 636 (1991) (plurality) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 690–691 (1975) (declining to reexamine the Maine Supreme Judicial Court's decision that, under Maine law, all intentional or criminally reckless killings are aspects of the single crime of felonious homicide); *Murdock v. City of Memphis*, 20 Wall. 590, 22 L.Ed. 429 (1875)). Therefore, Petitioner cannot show that the state court and state post-conviction court unreasonably applied federal law on this issue.

Moreover, Petitioner's argument that the jury verdict form did not distinguish between felony murder and premeditated murder is irrelevant, because the evidence supports convictions under either theory. *See Yates v. United States*, 354 U.S. 298, 312 (1957) ("[A] verdict [is required] to be set aside in cases where the verdict is *supportable on one ground, but not on another*, and it is impossible to tell which ground the jury selected." (emphasis added)). *See also Knight v. Dugger*, 863 F.2d 705, 725 (11th Cir. 1988) ("At the time of Petitioner's trial, Florida law permitted (and still does) the state to prosecute under premeditated or felony murder theories when the indictment charged premeditated murder. . . . The state prosecuted primarily under a premeditated design theory even though evidence showing felony-murder was introduced at trial. The trial court simply refused to limit the state to one theory of prosecution where state law permitted the prosecution to proceed under a dual theory. . . . The benefit to the state from the error (if any was committed) did not contribute to Petitioner's conviction since there was ample evidence upon which to base a conviction under either theory.").

Here, evidence was presented that Petitioner, who used to work for the victim and reside at the victim's home, was not living there on the date of the murder—he had left for Michigan. (Doc. 20 Ex. 1 at 78-79, 86-87-119-136). The victim discovered that $600 had been withdrawn from his business account without authorization. (*Id.* at 95). When contacted by a co-owner of the business, Petitioner denied taking the money, but the co-owner told Petitioner he knew Petitioner had taken it. (Doc. 20 Ex. 1 at 96. The victim cancelled service on Petitioner's cellphone, which was in the name of the victim's business. (*Id.* at 96-97). Petitioner then flew from Detroit to Orlando using a one-way ticket on April 1, 2008, arriving at 4:05 p.m. (*Id.* at 151). Early the next morning, April 2, 2008, Petitioner called his girlfriend and told her he had "messed up." (*Id.* 185-86). On the afternoon of April 2, 2008, the victim was found dead near a canal behind his home. (*Id.* at 124). The victim had been beaten and strangled and had multiple post-mortem burns. (*Id.* at 241, 245-55). The victim's car was also missing and presumed stolen. (*Id.* at 140).

On April 3, 2008, around 12:30 a.m., after learning there had been trouble between Petitioner and the victim, Florida law enforcement contacted New Haven, Michigan, police with Petitioner's name and a description of the victim's vehicle. (Doc. 20 Ex. 1 at 145-47). Less than ten minutes later, Petitioner was located in Michigan with the victim's car and was taken into custody. (*Id.* 147, 177-181). Petitioner had one of the victim's credit cards in hand and another in his pocket, and the victim's other credit cards, wallet, and driver's license were found in the vehicle. (*Id.* at 149, 177-181). Petitioner's facial hair, at the time he was located, appeared to have been singed. (*Id.* at 173-75).

In the victim's house, investigators found shoe tracks, linear marks, and traces of blood, and the bed linens had been removed from the master bedroom. (Doc. 20 Ex. 1 at 209, 214). Additionally, Petitioner admitted to setting fire to the victim's body. (*Id.* at 391).

Premeditation is "more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act." *Oliver v. State*, 214 So. 3d 606, 618(Fla. 2017) (quoting *Bradley v. State*, 787 So. 2d 732, 738 (Fla. 2001)). "Premeditation may be inferred from such facts as 'the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.' " *Id.* (quoting *Bradley*, 77 So. 2d at 738). First degree felony murder is "[t]he unlawful killing of a human being . . . [w]hen committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any . . . [b]urglary [among other listed crimes]." Fla. Stat. § 782.04(1)(a)(2).

The evidence presented supports either theory of first degree murder in this case and constituted a reasonable basis on which the state courts could find: (1) that the state trial court did not err in giving the felony-murder instruction or using a general verdict form and (2) that Petitioner's counsel was not ineffective for failing to object to the felony murder instruction. Petitioner has not demonstrated that the state court rulings were contrary to or involved an unreasonable application of clearly established federal law or were based on an unreasonable

determination of the facts presented to the state court. Accordingly, Grounds Three and Eleven are denied.

### D. Grounds Four, Five, Six, and Seven

Grounds Four, Five, Six, and Seven relate to the prosecutor's closing argument at trial.

#### 1. Grounds Four and Six

In Ground Four, Petitioner contends that the State prosecutor committed misconduct by including impermissible arguments in his closing statement to the jury. (Doc. 1 at 10). Specifically, he challenges that the prosecutor erred by "repeatedly [telling] the jurors that Petitioner's testimony was 'carefully–crafted' to fit the evidence presented during trial and that Petitioner was 'not credible.' " (*Id.*). Similarly, in Ground Six, Petitioner contends that the prosecutor "misrepresent[ed] material evidence and ma[de] arguments not based on facts in evidence or reasonable inferences that [could] be drawn therefrom." (*Id.* at 13). He challenges statements made by the prosecutor about a crime scene investigator's testimony regarding swipe and drag marks in the victim's home, contending that the trial court ruled there was no evidence to support kidnapping. (*Id.*). Grounds Four and Six were raised as issues one and three in Petitioner's Rule 3.850 motion, but were not raised on direct appeal.

As with Ground Twelve, the state post-conviction court determined that the issues raised by Grounds Four and Six were procedurally barred because they should have been raised on direct appeal. (Doc. 20 Ex. 5 at 78). That decision was affirmed, per curiam, by the state appellate court. (Doc. 20 Ex. 8 at 61). Accordingly, because the state court found the issue procedurally

barred, the issue is not cognizable on federal habeas review, *see supra* section III(C)(1), and Grounds Four and Six are denied.

### 2. Grounds Five and Seven

In Grounds Five and Seven, Petitioner contends that his counsel erred by failing to object to the prosecutor's allegedly improper arguments and misrepresentations of the evidence. (Doc. 1 at 12, 15). Specifically, Petitioner asserts that his trial counsel "failed to object [during the prosecutor's closing argument] when the prosecutor told the jury that Petitioner's testimony was 'carefully crafted' to fit the evidence presented during trial and when [the] prosecutor gave his purported personal belief multiple times that Petitioner was 'not credible.' " (*Id.* at 12). Petitioner contends that his counsel's failure to object led jurors to "deliberat[e] with the prosecutor's personal beliefs influencing their decision[-]making process and ability to weigh the evidence." (*Id.*).

He also asserts that his counsel erred by "fail[ing] to object when the prosecutor argued to the jury his personal belief of how the incident occurred after [the] trial court specifically ruled that there was no evidence to any kidnapping [] crime in the home, [] nor any evidence to a physical altercation in the house." (Doc. 1 at 15). According to Petitioner, his trial counsel improperly failed to object when the prosecutor

> misquoted [crime scene investigator] testimony in order to fit his own version of events. Had counsel objected to the first of [seven] separate instances, [six] other times would never [have] occurred[,] . . . a curative instruction would have been given[,] and the jury more likely would have either acquitted or reached a verdict on a lesser included offense.

(*Id.*).

In his Rule 3.850 motion, Petitioner raised Ground Five as issue two and Ground Seven as issue four. (Doc. 20 Ex. 5 at 30, 31, 34-36). The state post-conviction court denied Petitioner's Rule 3.850 motion and the state appellate court affirmed the denial per curiam. (*Id.* at 79-80, 84; Doc. 20 Ex. 6 at 31-35; Doc. 20 Ex. 8 at 61).

Under federal law, to determine whether Petitioner is entitled to relief based on the prosecutor's comments, this Court must engage in a two pronged analysis: first, "whether the prosecutor's comments were improper;" and, second, "whether any comments found [to be] improper were so prejudicial as to render the trial fundamentally unfair." *Davis v. Kemp,* 829 F.2d 1522, 1526 (11th Cir. 1987), *cert. denied,* 485 U.S. 929 (1988). The trial is rendered fundamentally unfair if "there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome . . . would have been different. . . . [A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Kemp,* 846 F.2d 1276, 1283 (11th Cir. 1988), *cert. denied,* 494 U.S. 1090 (1990) (citations and quotations omitted). *See also Drake v. Kemp,* 762 F.2d 1449, 1458 (11th Cir.1985), *cert. denied,* 478 U.S. 1020 (1986).

Here, the state post-conviction court noted that the prosecutor's comments about the crime scene were evidence based and did not misquote the crime scene investigator's testimony; nor did the prosecutor's comments improperly imply that kidnapping was the underlying felony for the prosecution's felony murder theory.[11] (Doc. 20 Ex. 5 at 80-82; Doc. 20 Ex. 1 at 207-14; Doc. 20 Ex. 2 at 31-32, 54, 61-65, 87).

---

[11] The state post-conviction court explained,

24

As for the prosecutor's comments on Petitioner's credibility, the prosecutor stated during closing argument:

> So we would submit to you, ladies and gentlemen, that when you look at all that evidence, we've proven beyond a reasonable doubt that this man, Mr. Tiszai, is the one who killed Mike Chastain and he was there. And you can listen to the two different statements to Detective Clarke, and those are played more for you to hear Mr. Tiszai and what he's got to say and what happened. And the first one, well, I snuck into the house, didn't confront, didn't see anybody, took my clothes, drove away. I had gotten robbed.
>
> And in the second statement he wants the detectives to come back up, and they come back up at his request. And when you look at it, he now changes the story of what occurred, and he admitted here today that certainly some of the things he told was to try to answer the evidence that he knew was there. Okay, I got blood on my jeans, on my shoes, Mike was bleeding from the mouth and was trying to spit at Brett, and it got on him. Brett was too drunk to drive, I need two dollars worth of gas, so I took my gas can up and got some gas, trying to answer, oh, Scott, somebody threw the fish tank in the canal and Mike asked me to go get it.

---

After argument, the trial court found the evidence did not establish a "kidnapping" had occurred, and therefore, would not allow the forcible felony of kidnapping to be used to prove the first degree murder charge.

However, the ruling by the trial court did not preclude the State from arguing their theory that the victim was strangled in his bed, dragged outside while he was still alive, and then killed. The ruling only modified how the jury would be instructed as to first degree felony murder, and what forcible felony instructions would be included. Therefore, the State was still permitted to argue to the jury their theory of the case; only the jury would not be instructed on "kidnapping" as part of proving first degree murder.

Moreover, the State did not misquote [the crime scene investigator's] testimony in closing arguments, nor [was the State] prohibited from arguing theories based on the testimony and evidence.

(Doc. 20 Ex. 5 at 81-82).

Now, the Court will tell you that when a defendant takes the stand, he doesn't get extra credit because he gave up his right to remain silent. You treat him like you do any other witness. And the Court is going to give you some guidelines to look at when you're trying to determine the credibility and the weight of witnesses' testimony, each and every witness. And you have to treat Mr. Tiszai like you do any of the other witnesses. But you can determine what weight, if any, to give his testimony, what credibility you need to give it, and we would submit to you, ladies and gentlemen, that what he said here today is carefully crafted to answer the evidence during the course of the trial just as he did on May 1st when he talked to Detective Clarke and trying to come up with how to explain everything. Well, now we got some choking. Okay. A choke hold and he sexually came onto me and attacking me and is there in the nude and I don't know what was going on.

But we would submit to you, ladies and gentlemen, that his testimony is not credible. The only credible part is he's the person who was there, he's the person wielding the weapon, and he's the person that killed Michael Chastain and took the car. But his own testimony that Mr. Chastain kept coming at him 14 times as he's hitting him over the head and he keeps coming at him, common sense would indicate there is no way that a drunk is going to keep coming at 14 times. He went down to the ground, and he continued to deliver the blows because he wanted Mike Chastain dead right there. And then he poured gasoline on him. But he kept the gas can because it might have evidence, but he threw it out on the highway when he was on the interstate. But yet he kept the shoes because I guess they're Nikes, and you don't want to throw those away if they've got blood on them. He kept the jeans because they're a nice pair of jeans and you can wash them up. Maybe I can get them disposed of or cleaned up before I get in the car. And, sure, he didn't expect to be caught within 24 hours of killing Mr. Chastain. I mean, to take some of the evidence and to throw it out, well, I still have the stick, but I guess the head, the broken burnt piece that was still in the car came off and I didn't know that.

His testimony is not credible. It's crafted to answer all the issues.

(Doc. 20 Ex. 2 at 59-61).

Under federal and Florida law, argument on the credibility of witnesses is permitted during closing argument. *See, e.g.*, *United States v. Sosa*, 777 F.3d 1279, 1298 (11th Cir. 2015) (finding no error where the prosecutor was "urging the jury to conclude that [the defendant's] testimony was not credible *based on a consideration of the relevant evidence*. (emphasis in original)); *Ford v. State*, 802 So. 2d 1121, 1129 (Fla. 2001) ("Both the prosecutor and defense counsel are granted wide latitude in closing argument."); *Watkins v. Sims*, 81 Fla. 730, 741 (Fla. 1921) (attacking the credibility of a witness is proper if based on evidence or the witness's appearance and conduct while giving testimony).

The state post-conviction court explained that the prosecution's closing argument was not improper because it was confined to facts established by, or reasonably inferred from, the evidence of record:

> When a defendant takes the stand, his credibility may be assailed like that of any other witness. *Perry v. Leeke*, 488 U.S. 272, 282 (1989). A prosecutor's closing argument is not limited to a "flat, robotic recitation[ ] of 'just the facts.' " *Jackson v. State*, 89 So. 3d 1011 (Fla. 4th DCA 2012) (quoting *Diaz v. State*, 797 So. 2d 1286, 1287 (Fla. 4th DCA 2001)). A prosecutor may robustly and vigorously argue the truthfulness of a witness whose credibility is under attack. *Id.* at 1018. Attacks upon the defendant's credibility are entirely proper. *Burst v. State*, 836 So. 2d 1107 (Fla. 3d DCA 2003). The consistency and reasonableness of a defendant's testimony are subjects of legitimate comment in closing argument. Where the defendant voluntarily takes the stand and testifies as a witness in his or her own behalf, he or she becomes subject to cross-examination like any other witness. *Dabney v. State*, 119 Fla 341 (1935). Furthermore, the prosecutor has the right to comment on the defendant's testimony, manner, and demeanor on the stand, including reasonableness or unreasonableness of testimony, and any discrepancies that may appear in the testimony, to the same extent as would be proper with reference to the testimony of any other witness. *Id.* at 343.

> Additionally, the prosecution is permitted to comment upon the essential unbelievability of the defendant's testimony. *Reaves v. State*, 324 So. 2d 687 (Fla. 3d DCA 1976). A prosecutor may legitimately comment upon the credibility of an accused who chooses to testify as long as the argument is confined to those facts that are established by the record or that may be reasonably inferred. *Gale v. State*, 483 So. 2d 53 (Fla. 1st DCA 1986).
>
> It was not improper for the prosecutor to argue in closing that the Defendant "crafted" his testimony and that he was not "credible." Therefore, it was not ineffective assistance to fail to object to comments that are permitted under the law. Accordingly, Defendant is not entitled to any relief.

(Doc. 20 Ex. 5 at 79-80).

Petitioner has not demonstrated, and this Court cannot conclude, that the state courts' adjudications of these claims were contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to relief on Grounds Five and Seven.

### E. Ground Eight

In Ground Eight, Petitioner claims that his trial counsel was ineffective for failing "to request a viable self-defense jury instruction and erroneously advising [Petitioner] to waive such instruction." (Doc. 1 at 16). He contends that his counsel advised him that he did not meet the criteria for self-defense and that he should, instead, rely on the defense of excusable homicide. (*Id.*). Ultimately, he contends that, "[h]ad trial counsel advised [him] to accept [a] self-defense instruction and properly presented the fact that his criminal liability was diminished due to the fact

[that] he was preventing the commission of a forcible felony, then it[']s very likely that he would have been acquitted of first-degree murder." (Doc. 23 at 32; *see also* Doc. 1 at 16).

Petitioner raised this claim as issue five of his Rule 3.850 motion and the state post-conviction court denied his claim. (Doc. 20 Ex. 5 at 82). The state court explained,

> Defendant alleges counsel was ineffective for failing to request a self-defense jury instruction and for advising him to waive such an instruction. The record refutes this claim.
>
> The trial court conducted a lengthy inquiry regarding a self-defense instruction. ([Doc. 20 Ex. 2 at 25-28]). The Defendant stated he was waiving his right to a self-defense instruction. ([Doc. 20 Ex. 2 at 25-26]). Counsel specified this was a tactical decision. The prosecutor asked the Court to inquire as to whether the Defendant agreed with this tactical decision. When questioned, Defendant agreed with the tactical decision and wished to waive the instruction. ([Doc. 20 Ex. 2 at 25-28]).
>
> Prior to closing arguments, the trial court again inquired into whether the Defendant had sufficient time to discuss with counsel the decision to waive the self-defense instruction. ([Doc. 20 Ex. 2 at 44-45]). The Court wanted to make it clear for the record that Defendant was not going to come back later and say he wanted a self-defense instruction. ([Doc. 20 Ex. 2 at 44). Defendant indicated that it was his decision and what he wanted. ([Doc. 20 Ex. 2 at 44-45).
>
> Additionally, Defendant told the trial court he was satisfied with his attorney, had no complaints about her representation, and she did everything he wanted her to do. ([Doc. 20 Ex. 2 at 107-108]). Defendant's claim is conclusively refuted by the record. Accordingly, Defendant is not entitled to relief.

(Doc. 20 Ex. 5 at 82). The state appellate court per curiam affirmed the state court's denial of Petitioner's Rule 3.850 motion. (Doc. 20 Ex. 8 at 61).

The claims made by Petitioner with regard to Ground Eight are due to be denied. Although he argues that his trial counsel's decision to pursue a defense of excusable homicide rather than self-defense was patently unreasonable, a defendant is bound by statements made under oath. *Henry v. State*, 920 So.2d 1245, 1246 (Fla. 5th DCA 2006). Under oath, Petitioner stated that he agreed with the tactical decision made by his counsel and provided no indication that he had been coerced or threatened in any manner when answering the trial court's questions. Nor does he argue any such coercion or threat in the instant petition.

Petitioner's agreement with the strategy of his counsel constitutes a reasonable basis on which to find his counsel's performance was not ineffective. *See Harrington*, 562 U.S. at 105 ("[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."). *See also Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (citation omitted)).[12]

---

[12] Petitioner implies that an evidentiary hearing is required to determine trial counsel's true trial strategy. (Doc. 23 at 32). However, the state post-conviction court held an evidentiary hearing on issue seven raised in Petitioners Rule 3.850 motion, and the Court finds an additional evidentiary hearing is unnecessary. Although the evidentiary hearing pertained to a different issue (the insanity defense, rather than self-defense), the state court elicited information from Petitioner's trial counsel about her trial strategy, which involved the defense of excusable homicide. Trial counsel's testimony indicated that she was unaware of Petitioner's purported basis for a self-defense theory—that he was sexually attacked by the victim—until after a jury was picked for trial. The post-conviction court found her testimony credible and additionally noted that Petitioner pushed for a speedy trial and refused to waive his right to a speedy trial. Therefore, the state court found that, on the verge of the beginning of trial, counsel for petitioner acted reasonably in pursuing the prepared defense of excusable homicide. (Doc. 20 Ex.6 at 31-35). Nothing in the instant petition compels this Court to second-guess the state post-conviction court's findings.

Petitioner has not demonstrated that the state post-conviction court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Ground Eight is denied.

## F. Ground Nine

In Ground Nine, Petitioner argues that his trial counsel erred by failing "to request an evidentiary hearing to determine the probative value of fewer gruesome autopsy photos, where a limited number would have been sufficient for the State's case." (Doc. 1 at 18). He states that the State presented two diagrams and nineteen colored photos, twelve of which "were used to display/acknowledge injuries that were not relevant to the cause of death." (*Id.*). He contends that, "had counsel obtained [an] evidentiary hearing, fewer photographs would have been presented—those limited to the cause of death—and minimized the prejudicial effect of the inflammatory nature [of the photographs] on the jury." (*Id.*). Petitioner raised this claim as issue six in his Rule 3.850 motion. The state post-conviction court denied relief, and the state appellate court affirmed per curiam. (Doc. 20 Ex. 5 at 83-84; Doc. 20 Ex. 8 at 61).

"In habeas corpus proceedings, federal courts generally do not review a state court's admission of evidence. . . . [F]ederal habeas corpus relief [will not be granted] based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Sims v. Singletary*, 155 F.3d 1297, 1312 (11th Cir. 1998). Even if erroneous, a Petitioner must show that the evidentiary ruling "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

The state post-conviction court, in denying relief, determined that the photographs were relevant, not cumulative, and were properly admissible, thus, there was no basis for counsel to object or request an evidentiary hearing on the issue:

> In *Henderson v. State*, 463 So. 2d 196, 200 (Fla. 1985), the Florida Supreme Court held that "[p]ersons accused of crimes can generally expect that any relevant evidence against them will be presented in court . . . [t]hose whose work products are murdered human beings should expect to be confronted by photographs of their accomplishments . . . [i]t is not to be presumed that gruesome photographs will so inflame the jury that they will find the accused guilty in the absence of evidence of guilt. Rather, we presume that jurors are guided by logic and thus are aware that pictures of the murdered victims do not alone prove the guilt of the accused."

> . . .

> Based on [a] conversation between the parties and the trial court [at a pretrial hearing on May 4, 2009], it appears there were efforts on both sides to limit the number of photos, and to ensure each photo was relevant to the injuries sustained and were not cumulative. Only nineteen (19) photos were admitted showing the numerous injuries on the victim who was beaten, strangled and then set on fire, all of which were injuries caused by the Defendant.

> The photographs were testified to by the medical examiner and related to all the different injuries sustained by the victim. ([Doc. 20 Ex. 1 at 242-54]). Because the photos were not cumulative, and were relevant to illustrate the numerous injuries, there was no basis to object. *Chavez v. State*, 832 So. 2d 730, 763 (Fla. 2002). With no legal basis to object, counsel was not ineffective. Accordingly, Defendant is not entitled to relief.

(Doc. 20 Ex. 5 at 83-84).

Petitioner challenges that the photos were not relevant because "the injuries were never in dispute, the perpetrator [was] never in question[,] and this was not a death penalty case where excessive gruesome photographs could be used to secure a sentence of death." (Doc. 23 at 34-35).

However, Petitioner has challenged other determinations in the case, such as the sufficiency of the evidence against him regarding the charge premeditated first degree murder, to which the photographs were relevant. *See infra* section III(H) (Ground Thirteen). Thus, contrary to his allegations, the photos were not "gratuitous." (Doc. 23 at 34).

Moreover, Petitioner's assertions that "[a] lunch date is not the proper method for resolving such a possible grievous issue such as this for a [d]efendant" and that a pre-trial motion to exclude and an evidentiary hearing were the proper means of resolving the admissibility of the photographs warrant no consideration. As the state court determined, counsel worked to, and were able to, narrow the photographs to those relevant to the case.

Petitioner has failed to demonstrate that the evidentiary ruling affected the fundamental fairness of the trial, or that the state post-conviction court's decision was contrary to or involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Ground Nine is denied.

## G. Ground Ten

In Ground Ten, Petitioner contends that his trial counsel improperly failed "to petition and/or obtain [a] psychological examination to determine [his] criminal liability at [the] time of [the] crime—when sanity was an issue presented by the defense." (Doc. 1 at 19). Petitioner states that he "explained to counsel that his actions were a result of self-defense while fending off a sexual assault. [He] explained that as a result of sustaining sexual abuse as a child he went into a 'blackout' or alter[ed] state of consciousness—a diminished capacity—and inflicted the death of

33

the victim." (*Id.*). Petitioner describes that "[t]rial counsel presented this defense at trial by having [him] testify, but failed to investigate further and obtain expert opinions or present testimony which would have supported [the] defense." (*Id.*).

Petitioner presented this issue as issue seven in his Rule 3.850 motion for post-conviction relief. After an evidentiary hearing, the state post-conviction court denied his claim, explaining:

> At the [evidentiary] hearing, Defendant testified that he told Tanya Terry ("Terry"), his trial attorney, that he had blacked out when the victim attacked him and went into an altered or regressed state. When questioned by the State as to what he meant by a "regressed state," Defendant explained that he was not an expert and could not explain what that meant. Defendant testified he met with Terry four to six times prior to trial and discussed this with her. This was the only testimony presented by Defendant as to this claim.
>
> . . .
>
> Terry indicated she has handled many cases where a defendant's insanity at the time of the offense was an issue. Terry testified as to her trial strategy and theory of defense in this particular case. Terry opined that this case was never an insanity case. Terry testified that after jury selection the Defendant's grandparents told her that Defendant had been sexually molested as a child and he had told them that he had gone into a "blacked out state" when the victim attacked him. After receiving this new information, Terry questioned Defendant about the information she received, and Defendant told her he had been molested as a child. Defendant then proceeded to tell her that the victim had sexually attacked him and he went into a "blacked out state."
>
> Terry testified that Defendant never told her any of this information prior to trial, and the information did not come to light until after the jury had been selected. At trial, the theory of defense was excusable homicide. Terry did not think it was sound trial strategy to pursue a self-defense theory of defense. . . .
>
> During trial, the trial court conducted a lengthy inquiry regarding a self-defense instruction. ([Doc. 20 Ex. 2 at 25-28]).

The Defendant stated he was waiving his right to a self-defense instruction. ([Doc. 20 Ex. 2 at 25-26]). Counsel specified this was a tactical decision. The prosecutor asked the Court to inquire as to whether the Defendant agreed with this tactical decision. When questioned, Defendant agreed with the tactical decision and wished to waive the instruction. ([Doc. 20 Ex. 2 at 26-28]). Prior to closing arguments, the trial court again inquired into whether the Defendant had sufficient time to discuss with counsel the decision to waive the self-defense instruction. ([Doc. 20 Ex. 2 at 44-45]). The Court wanted to make it clear for the record that Defendant was not going to come back later and say he wanted a self-defense instruction. ([Doc. 20 Ex. 2 at 44]). Defendant indicated that it was his decision and what he wanted. ([Doc. 20 Ex. 2 at 44-45]).

It is apparent that an insanity defense was not explored by Terry because she was not provided any information regarding Defendant's possible "altered" mental state at the time of the offenses until after a jury had been selected. Terry's actions were driven and influenced by what Defendant told her prior to trial. It cannot be expected that she could have legally pursued, or even investigated, an insanity defense at the time she was provided the information. It was not unreasonable for her to pursue the theory of defense presented at trial, which the Defendant agreed to when questioned by the Court.

At the hearing, there was no testimony from Defendant that he had ever been evaluated by a mental health professional and diagnosed with a mental infirmity, disease, or defect. *See* Fla. Stat. § 775.027 (2000). Additionally, at no point during the trial did Defendant indicate to the trial court that he wanted to pursue an insanity defense or be evaluated by a mental health professional. Furthermore, Defendant told the trial court he was satisfied with his attorney, had no complaints about her representation, and she did everything he wanted her to do. ([Doc. 20 Ex. 2 at 107-108]).

It is also important to mention that Defendant refused to waive speedy trial after filing documents based on the Interstate Agreement on Detainers Act under[Section] 941.45 Fla. Stat. (1997). . . .

. . .

On April 29, 2009, pursuant to Defendant's request, Terry filed a Notice of Expiration as Defendant was adamant about having a speedy trial. Defendant cannot come back now and indicate that counsel failed to pursue an insanity defense, or have him evaluated by mental health experts, when counsel did not have any information regarding this possible theory until after jury selection. More importantly, Defendant wanted to push the case to trial as quickly as possible, only providing Terry approximately three (3) months to prepare for a first-degree murder case, even after the Court cautioned him about this decision.

Based on the testimony presented at the hearing, the Court finds Terry acted reasonably in her representation of Defendant. Terry had an independent recollection of the facts and circumstances of her representation and what conversations occurred in relation to this particular claim. The Court finds her testimony more credible than the Defendant's. Furthermore, Defendant has failed to meet his burden in proving that counsel's performance was deficient under Strickland. Counsel's actions and trial strategy were reasonable under the circumstances, and Defendant was not prejudiced.

(Doc. 20 Ex.6 at 32-35). The state appellate court affirmed per curiam the denial of Petitioner's Rule 3.850 motion. (Doc. 20 Ex. 8 at 61).

The record, as cited within the state post-conviction court's order, supports the court's decision. The circumstances presented (that Petitioner informed his counsel of a possible altered mental state after a jury was picked (i.e., immediately before trial), that he refused to waive his speedy trial rights, and that—in open court and under oath—he agreed with his counsel's strategic decision to pursue a defense of excusable homicide rather than self-defense and stated he was satisfied with his counsel's performance), constitute a reasonable basis on which the state post-conviction court could find Petitioner's trial counsel was not ineffective for failing to investigate

his allegations of mental infirmity during the commission of the crime. *See Harrington*, 562 U.S. at 105.

As Petitioner has not demonstrated that the state post-conviction court's decision was contrary to or involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts in light of the evidence presented, Ground Ten is denied.

## H. Ground Thirteen

Finally, in Ground Thirteen, Petitioner asserts a Fourteenth Amendment due process violation, challenging the sufficiency of the evidence produced by the State regarding the charge of first degree premeditated murder. (Doc. 1 at 22). He argues that the State did not present any evidence of premeditation and states that he testified to using self-defense against the victim. (*Id.*).

As with Grounds Four, Six, and Twelve, Petitioner raised Ground Thirteen in his amended Rule 3.850 motion (as what the court construed as issue fifteen) but did not raise the issue on direct appeal. (Doc. 20 Ex. 5 at 78). The state post-conviction court denied the motion, finding the claim raised by Ground Thirteen procedurally barred because Petitioner did not raise it on direct appeal. (*Id.*). The decision was affirmed per curiam by the state appellate court. (Doc. 20 Ex. 8 at 61). Because the state court found the issue procedurally barred, the issue is not cognizable on federal habeas review and Ground Thirteen is denied. *See supra* section III(C)(1).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner "makes a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2).    To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009).    When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find this Court's assessment of the constitutional claims debatable or wrong.    Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable.    Petitioner has failed to make a substantial showing of the denial of a constitutional right.    Thus, this Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.    The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED,** and this case is **DISMISSED WITH PREJUDICE.**

2. Petitioner is **DENIED** a certificate of appealability.

3. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE AND ORDERED** at Orlando, Florida, this 5th day of January, 2018.

JOHN ANTOON, II
UNITED STATES DISTRICT JUDGE

Copies to:
*Pro se* Petitioner
Counsel of Record
OrlP-5